IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

CRAIG FLANAGAN, ET AL.                                                      PLAINTIFFS

v.                                                    CIVIL ACTION NO. 2:17-cv-33-KS-MTP

NATIONWIDE PROPERTY AND
CASUALTY INSURANCE COMPANY                                                   DEFENDANT

## ORDER

THIS MATTER is before the Court on Plaintiff's Motion to Compel [32]. Having considered the parties' submissions and the applicable law, the Court finds that the Motion [32] should be granted.

## BACKGROUND

In this action, Plaintiffs assert a bad faith claim against Defendant Nationwide Property and Casualty Insurance Company ("Nationwide") arising from Nationwide's alleged wrongful failure to pay the total amount of proceeds owed to Plaintiff Craig Flanagan ("Flanagan") under an uninsured/underinsured motorist coverage policy after Flanagan was involved in a motor vehicle accident on May 31, 2014. (Amended Complaint [22]). During the investigation of the accident, Nationwide sought the services of Attorney William McDonough with the law firm of Copeland Cook Taylor and Bush. (Motion [32]; Nationwide's Brief [38]). Subsequently, McDonough assisted Nationwide in its investigation of Flanagan's uninsured motorist claim.

On March 7, 2017, Plaintiffs filed this action. Thereafter, Plaintiffs served its first set of requests for production upon Nationwide, which included the following request:

> **Request No. 3:** Produce all documents and other materials . . . that comprise your claims file(s)/investigative files(s)/special investigative file(s)/outside counsel file(s) relating to the subject claims up until the date that you retained the law firm of Upshaw Williams to defend this matter.

1

([32-3]).

Nationwide objected to this request, asserting the attorney-client privilege and the work product doctrine. Notwithstanding this objection, Nationwide pointed Plaintiff to its initial disclosures and produced other documents. Nationwide, however, withheld certain other documents, which included communications between McDonough and Nationwide, and listed those documents in a privilege log. ([32-3]; [32-4]).

Additionally, on June 22, 2017, Plaintiffs had a subpoena issued to and served on McDonough, requesting that he produce, *inter alia*, "[a]ll billing records or invoices for Copeland Cook Taylor and Bush, including billing guidelines and records documenting billings that Nationwide refused to pay . . . ." ([25-1]). Both McDonough and Nationwide objected to the subpoena, arguing that the billing statements are protected by the attorney-client privilege and the work product doctrine. ([30], [31]).

On July 7, 2017, Plaintiffs filed the instant Motion [32], requesting that the Court compel Nationwide to produce its communications with McDonough and compel McDonough to produce his billing records or invoices and billing guidelines. Plaintiff argue that they are entitled to the documents because the protections afforded by the attorney-client privilege and the work product doctrine were either inapplicable to the documents at issue or waived by Nationwide.

**ANALYSIS**

*Attorney-Client Privilege*

Pursuant to Federal Rule of Evidence 501, state law determines the applicability of a privilege in diversity actions such as the case *sub judice*. Thus, Mississippi law governs this privilege issue. In Mississippi, the attorney-client privilege is defined as the client's right to

refuse to disclose and prevent others from "disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client . . . ." Miss. R. Evid. 502(b).

"'The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law. Its purpose is to encourage full and frank communication between attorneys and their clients and thereby to promote broader public interests in the observance of law and administration of justice.'" *Hewes v. Langston*, 853 So. 2d 1237, 1244 (Miss. 2003) (quoting *Upjohn Co. v. U.S.*, 449 U.S. 383, 389 (1981)). This privilege is broad, but it may be waived. A waiver may occur when a client reveals otherwise privileged communications to a third party. A client may also waive the attorney-client privilege and make information discoverable "'[b]y voluntarily injecting into a litigated case, a material issue which requires ultimate disclosure by the attorney of the information, ordinarily protected by the privilege . . . .'" *Jackson Med. Clinic of Women, P.A. v. Moore*, 836 So. 2d 767, 773 (Miss. 2003) (quoting *American Standard, Inc. v. Nedix Corp.*, 80 F.R.D. 706, 708 (W.D. Mo. 1978)).

The United States Court of Appeals for the Fifth Circuit explained that

> The attorney-client privilege was intended as a shield, not a sword. When confidential communications are made a material issue in a judicial proceeding, fairness demands treating the defense as a waiver of the privilege. The great weight of authority holds that the attorney-client privilege is waived when a litigant places information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information would be manifestly unfair to the opposing party.

*Conkling v. Turner*, 883 F.2d 431, 434 (5th Cir. 1989) (internal citations and quotations omitted).

"[T]he general rule, which Mississippi appears to follow, is that a waiver of the privilege is deemed to encompass all information related to that topic." *Baptist Health v. Bancorpsouth Ins. Servs., Inc.*, 270 F.R.D. 268, 273 (N.D. Miss. 2010) (citing *Bennett v. State*, 293 So. 2d 1, 4

(Miss. 1974)). "'The waiver doctrine entails the result not only of the claim for the particular document, but for any other document relating to the same subject matter.'" *Id*. at 274 (quoting Wright, Miller & Marcus, Federal Practice and Procedure § 2016.2 at 238 & n. 7 (1994)).

Plaintiffs argue that Nationwide is relying upon the advice and actions of McDonough as a defense despite Nationwide's insistence that it is not asserting an "advice of counsel" defense.[1] According to Plaintiffs, "Nationwide has produced a number of communications between Nationwide and Copeland Cook in support of its defense to the bad faith allegations, but has chosen to cherry-pick which communications to produce in discovery and which communications to withhold on a claim of privilege." ([32] at 2). Plaintiffs also point to the fact Nationwide identified McDonough as a witness in its initial disclosures and point to Nationwide's interrogatory responses:

> **Interrogatory No. 7:** Describe the role, duties, and extent of participation in the handling of the Plaintiffs claim for each person identified in response to the preceding Interrogatory.
>
> **Response:** See claims files previously produced which sets forth all factual activities of the adjusters and Bill McDonough.
>
> **Interrogatory No. 17:** Set forth the bases of your advice of counsel defense identifying the attorney(s) who provided the advice you relied upon, and the advice counsel provided to you justifying your decisions regarding the Plaintiffs claims for policy benefits.
>
> **Response:** The Defendant has not plead advise of counsel. All factual statements and investigations done by Nationwide's outside counsel, Bill McDonough, has been produced. Mr. McDonough will testify as to what activities he did and the length of time for those activities to take place.

---

[1] Plaintiff also argues that documents and communications made prior to May 1, 2015, should be produced because McDonough was acting as counsel for Plaintiffs from the time he was hired by Nationwide on June 3, 2014, until April 30, 2015. As the Court is ruling on other grounds, the Court does not reach this issue, though there are a number of references in the documents at issue which tend to support this disputed assertion. *See*, *e.g.*, [32-1], [40-1], [40-5].

([32-15]).

In its Response [38], Nationwide argues that it has not pled and is not relying on advice of counsel as a defense.[2] Nationwide also argues that the documents it produced, including communications between it and McDonough, reveal "objective facts involved in the handling of this claim," not advice and work product of McDonough. According to Nationwide, the production of objective facts regarding its actions does not require the introduction of privileged communications.

A review of the documents produced by Nationwide, however, reveals that Nationwide did not simply disclose "objective facts" as it alleges, but also disclosed McDonough's opinions regarding Flanagan's evidence supporting his loss of income claim, Flanagan's ability to prove cognitive impairment, the need to hire experts, the benefits and risks involved in scheduling a medical examination, and the timeliness of Nationwide's investigation and payment to Flanagan. ([32-6], [32-10], [32-13], [32-14]).

For example, in a November 9, 2016, email, McDonough told James Downey with Nationwide, "I don't feel we have unnecessarily delayed payment of this claim, and in fact have advanced something like $2 million. Yes, we have had some unexpected delays, and the fact counsel sat on the report of Dr. Jim Irby caused further delay." ([32-10]). In another email sent on October 20, 2016, McDonough told Downey "I understand you will be calling counsel for the claimant to assure him we are not 'dragging our feet', but rather diligently working to get the neuro-psyc piece together in order to evaluate the remainder of the claim." ([32-9]).

---

[2] Nationwide did assert advice of counsel as a defense in its original Answer [3] filed on March 28, 2017. ([3] at 10). However, Nationwide did not include advice of counsel as a defense in its Amended Answer [27] filed on June 26, 2017.

Additionally, on April 25, 2016, McDonough sent an email to Downey explaining that "[w]ith no liability defense, Flanagan would no doubt receive a verdict for at least $3 million. To get this under the $6.75 total policy limit, we're going to have to chip away at the economic damages. However, even the most conservative, hand picked experts on our behalf are still going to have to concede tremendous economic damages." ([32-14]).

An insured cannot force an insurer to waive the protections of the attorney-client privilege merely by bringing a bad faith claim. Nationwide's prior production, however, has put at issue Nationwide's confidential communications with McDonough. Nationwide has voluntarily injected its counsel's advice into this case by purposely disclosing, *inter alia*, its counsel's opinion that Nationwide has not "unnecessarily delayed payment of [Flanagan's] claim . . . ." ([32-10]). To allow Nationwide to use the attorney-client privilege to withhold additional information related to counsel's advice "would be manifestly unfair" to Plaintiffs. *Conkling*, 883 F.2d at 434; *Jackson Med. Clinic*, 836 So. 2d at 773.

The Court finds that Nationwide has waived the attorney-client privilege for all communications between it and McDonough regarding insurance coverage advice or opinions related to Flanagan's claim for insurance proceeds or regarding the accident at issue.

*Work Product Doctrine*

Nationwide also contends that the documents at issue are protected by the work product doctrine. The work product doctrine is governed by Federal Rule of Civil Procedure 26(b)(3). "The work product doctrine does not exist to protect a confidential relationship but to promote the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of an opponent." *Liberty Mutual Ins. Co. v. Tedford*, 644 F. Supp. 2d 753, 764 (N.D. Miss. 2009).

Even if the work product doctrine is applicable to the information at issue, Nationwide waived its protections. "Where a party puts in issue an attorney's opinion or work product . . . both the attorney-client privilege and protections afforded by the work product doctrine are waived." *Liberty Mutual Ins. Co. v. Tedford*, 644 F. Supp. 2d 753, 764 (N.D. Miss. 2009) (citing *Cincinnati Ins. Co. v. Zurich Ins. Co.*, 198 F.R.D. 81 (W.D.N.C. 2000)). As previously discussed, Nationwide injected McDonough's advice into this case.[3]

***Documents to Be Produced***

Nationwide shall produce all written communications (or notes describing such) in its possession between Nationwide and McDonough regarding Flanagan's claim for benefits under the Nationwide policy at issue in this case up until the date that Nationwide retained the law firm of Upshaw Williams to defend this matter. Additionally, McDonough shall produce his billing records or invoices and billing guidelines.

IT IS, THEREFORE, ORDERED that:

1. Plaintiff's Motion to Compel [32] is GRANTED.

2. On or before August 11, 2017, Nationwide shall produce the documents at issue as set forth herein.

3. On or before August 11, 2017, McDonough shall produce the documents as set forth herein.

4. The Clerk of Court is directed to mail a copy of this order to:

   William McDonough
   Copeland Cook Taylor & Bush

---

[3] Additionally, Plaintiffs have demonstrated a "substantial need" for the information at issue. *See U.S. v. El Paso Co.*, 682 F.2d 530, 542 (5th Cir. 1982) (holding that materials protected by the work product doctrine "may be discovered if: (i) they are otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.")

7

P.O. Box 10
Gulfport, MS
39502-0010

SO ORDERED this the 4th day of August, 2017.

                                           s/Michael T. Parker
                                           UNITED STATES MAGISTRATE JUDGE